IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 3, 2025

## IN RE LOLA-RAYNE D.

Appeal from the Chancery Court for Giles County
No. 28CH1-2021-AD-326     M. Caleb Bayless, Chancellor

_____

### No. M2024-00980-COA-R3-PT

_____

Mother appeals the trial court's decision terminating her parental rights. She challenges the termination ground, which is severe child abuse, as well as the best interest determination. We have concluded that clear and convincing evidence supports both of these rulings by the trial court and, therefore, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and CARMA DENNIS MCGEE, JJ., joined.

Casey Adam Long, Lawrenceburg, Tennessee, for the appellant, Geneva D.

Tiffany M. Johns, Franklin, Tennessee, for the appellees, Michael H., Jr., and Amanda H.

Jonathan Skrmetti, Attorney General and Reporter, and Clifton Wade Barnett, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

Geneva D. ("Mother") gave birth to Lola-Rayne D. ("the child" or "Lola") in November 2019. At that time, Mother was married to James D. and, therefore, he was the child's legal father; James P. is the child's biological father. The rights of both fathers have been terminated and are not at issue in this appeal.

A few days after the child's birth, the Department of Children's Services ("DCS" or "the Department") filed a petition asking the juvenile court to adjudicate the child dependent and neglected and severely abused pursuant to Tenn. Code Ann. § 37-1-

102(b)(27) and to award the Department temporary legal custody. The juvenile court entered an ex parte protective order and placed the child in the Department's custody. After an initial hearing, the court ordered that the child would remain in DCS custody and that Mother would be allowed therapeutic visitation if she submitted two negative drug screens within a thirty-day period. The Department began developing family permanency plans for approval by the juvenile court. In late January 2020, DCS placed Lola with Michael H., Jr., and Amanda H. (collectively, "Foster Parents"). Michael H., Jr., is Mother's half-brother.

Mother was under a court order to turn herself in at the Giles County jail in late December 2019 on previous criminal charges, but she did not do so. A juvenile court adjudicatory hearing set in July 2020 was rescheduled because Mother was incarcerated in Lawrence County and could not be transported to court. The juvenile court adjudicatory and dispositional hearing took place on October 21, 2020. Mother waived the adjudicatory hearing and stipulated that the facts in the petition were true and that:

> The minor child is a victim of severe abuse due to mother's use of methamphetamine while pregnant, causing the minor child to be positive for methamphetamine at birth.

Based upon this stipulation, the court found that the child was dependent and neglected and that removal of the child was required. The court ordered that custody remain with the Department and that Mother would be allowed supervised visitation after she passed two consecutive drug screens within a thirty-day period.

Mother passed two drug screens in November and December 2020 and had her first supervised visitation with Lola on December 9, 2020, at a public library. At that visit, Mother was arrested on the outstanding warrant for failure to appear and violation of probation in Giles County. She was then incarcerated in Giles County until May 3, 2021. Mother resumed visits with the child in late May 2021 and completed intensive outpatient drug and alcohol treatment. On October 20, 2021, Mother filed a motion for unsupervised visitation and a motion for a trial home visit.

Foster Parents filed this petition for termination of parental rights and adoption on October 20, 2021, in chancery court, asserting that Mother's parental rights should be terminated based upon the grounds of abandonment by failure to support, persistence of conditions, and severe abuse. In November 2021, the juvenile court dismissed Mother's motions regarding visitation and a trial home visit and ordered that all matters be held in abeyance pending resolution of the petition for termination of parental rights.

The petition for termination was tried over seven days, beginning in January 2023 and finally concluding in February 2024. The court heard testimony from numerous witnesses, including Mother, both foster parents, various members of the extended family,

the Department caseworker, two visitation supervisors, the child's legal father, the person in whose home Mother was living, two of Mother's friends, a correctional officer, Mother's supervisor at work, and the child's teacher. In its order, entered on June 3, 2024, the court made credibility findings regarding all of the witnesses and made findings of fact and conclusions of law; these findings will be discussed below as relevant to the issues on appeal. The abandonment ground was "withdrawn from the Court's consideration," so the court made no ruling on that ground. The court found that the petitioners did not meet their burden of proof that the conditions that led to the child's removal persisted. On the third ground, severe child abuse, the court found that the petitioners proved by clear and convincing evidence that Mother committed severe child abuse against the child pursuant to Tenn. Code Ann. § 36-1-113(g)(4). The court then concluded that termination of Mother's parental rights was in the child's best interest and granted the petition to terminate Mother's parental rights and for adoption. Mother appeals.

STANDARD OF REVIEW

Our Supreme Court has found "that both the United States and Tennessee Constitutions protect parents' rights to the custody and care of their children." *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). This interest has been said to be "'far more precious than any property right.'" *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982)). Although this right is fundamental, parents may forfeit it by conducting themselves in ways that substantially harm their children. *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010). Before a court terminates a parent's rights to a child, it must be shown that the parent is unfit or that the child will suffer substantial harm if the parent's rights are not terminated. *In re Adoption of A.M.H.*, 215 S.W.3d at 809 (citing *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999)). The Tennessee legislature has established the methods and procedures by which parental rights may be terminated. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Petitioners must show clear and convincing evidence that at least one of the enumerated grounds found in the statute exists and that terminating the parent's rights is in the child's best interests. Tenn. Code Ann. § 36-1-113(c)(1)-(2); *In re Adoption of Angela E.*, 402 S.W.3d 636, 639 (Tenn. 2013). On appeal, reviewing courts must make their own determination as to whether the facts, "either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524.

We review findings of fact de novo upon the record with a presumption of correctness unless the preponderance of the evidence indicates otherwise. TENN. R. APP. P. 13(d); *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). The petitioner must prove both steps of the termination process by clear and convincing evidence. *In re Angela E.*, 303 S.W.3d at 250. "The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo

with no presumption of correctness." *In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)).

ANALYSIS

I.      Ground for termination:  severe child abuse

The sole ground upon which the trial court terminated Mother's parental rights was severe child abuse.  The court found:

> Here, the Court finds [from] both, a prior order of a court and this Court hearing the petition to terminate parental rights that [Mother] has committed severe child abuse against the child who is the subject of the petition.  On October 21, 2020 Judge Richardson of the Giles County Juvenile Court in an Adjudicatory and Dispositional Hearing Order, found [Mother] had committed severe abuse on the minor child due to the mother's use of methamphetamine while pregnant, causing the minor child to be positive for methamphetamines at birth.  Furthermore, proof was shown to this Court that [Mother] used methamphetamines while pregnant causing the minor child to be positive for the Schedule II drug at birth.  The Petitioners have met their burden of clear and convincing evidence that [Mother] did commit severe abuse of the minor child pursuant to Tenn. Code Ann. § 36-1-113(g)(4).

On appeal, Mother argues that the trial court erred in finding that she engaged in severe abuse as a ground for termination of her parental rights.

The relevant statute, Tenn. Code Ann. § 36-1-113(g)(4),[1] states:

> The parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child[.]

In the dependency and neglect proceedings, the juvenile court found Lola to have been severely abused pursuant to Tenn. Code Ann. § 37-1-102(b)(27)[2] based upon Mother's admitted "use of methamphetamine while pregnant, causing the minor child to be positive for methamphetamine at birth."  The applicable version of Tenn. Code Ann. § 37-1-

---

[1] We apply the statutes in effect at the time of the filing of the petition to terminate Mother's parental rights in October 2021.

[2] In its dependency and neglect petition, the Department requested that the court find the child to have been the victim of severe abuse pursuant to Tenn. Code Ann. § 37-1-102(b)(27).

102(b)(27) defined severe child abuse to include "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death." Tenn. Code Ann. § 37-1-102(b)(27)(A)(i).

On October 21, 2020, the juvenile court entered an order adjudicating the child dependent and neglected and finding that she was the victim of severe child abuse perpetrated by Mother. Mother did not appeal the juvenile court's order. Therefore, under Tenn. Code Ann. § 36-1-113(g)(4), Mother was "found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court," namely, the order of the juvenile court. On this basis alone, the trial court properly determined that Foster Parents proved by clear and convincing evidence the severe abuse ground for termination of Mother's parental rights. *See In re Sawyer B.*, No. E2023-01497-COA-R3-PT, 2025 WL 1276693, at *7 (Tenn. Ct. App. May 2, 2025) (holding that mother could not relitigate in a parental termination proceeding the juvenile court's previous final determination of severe child abuse); *see also In re Scarlett F.*, No. W2021-01292-COA-R3-PT, 2022 WL 4286927, at *10 (Tenn. Ct. App. Sept. 16, 2022).[3]

## II.     Best interest analysis

Having determined that clear and convincing evidence of at least one statutory ground exists to terminate Mother's parental rights, we must next consider whether the trial court properly determined that termination of Mother's parental rights was in the best interest of the child. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d 838,860 (Tenn. Ct. App. 2005). After a court finds that clear and convincing evidence

---

[3] Because principles of res judicata make the juvenile court's previous determination conclusive here, we need not consider Mother's argument that the trial court erred in making its own finding of severe child abuse. This Court has previously held that a mother's drug use while pregnant may constitute severe child abuse under Tenn. Code Ann. § 37-1-102(b)(27)(A)(i). *See, e.g.*, *In re Emmalyn H.*, No. E2022-00710-COA-R3-PT, 2023 WL 3411598, at *5 (Tenn. Ct. App. May 12, 2023); *In re Colton B.*, No. M2018-01053-COA-R3-PT, 2018 WL 5415921, at *7-8 (Tenn. Ct. App. Oct. 29, 2018). Mother's assertion is that the trial court failed to find that Mother "knowingly" exposed Lola to methamphetamines. Mother testified that she was not aware that she was pregnant when she used methamphetamines and that, once learning of the pregnancy in June 2019, she immediately discontinued her drug use. Based on this testimony, Mother argues that the trial court's decision is not consistent with the definition of "knowing" established by our Supreme Court in *In re Markus E.*, 671 S.W.3d 437, 444 (Tenn. 2023) (holding that a person acts knowingly "when he actually knows of relevant facts, circumstances or information, or when he is either in deliberate ignorance of or in reckless disregard of such facts, circumstances, or information").

Contrary to Mother's assertion, however, her testimony was not uncontroverted. The record shows that Mother tested positive for methamphetamines in September 2019 and at Lola's birth in November 2019; further, Lola tested positive for methamphetamines at birth and was diagnosed with neonatal abstinence syndrome. The trial court specifically found that Mother's testimony concerning her cessation of drug use was not credible. Therefore, the trial court did not err in finding that Mother "used methamphetamines while pregnant causing the minor child to be positive for the Schedule II drug at birth" and, therefore, concluding that she severely abused the child.

exists to support a ground for termination, the child's interests diverge from those of the parent, and the court focuses on the child's best interests. *In re Audrey S.*, 182 S.W.3d at 877. A court must view the child's best interest from the perspective of the child, not that of the parent. *Id.* at 878. A finding that at least one ground for termination of parental rights exists does not necessarily require that a parent's rights be terminated. *Id.* at 877. Because some parental misconduct is redeemable, our termination of parental rights statutes recognize that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* The facts a court considers in its best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). Once a court makes the underlying factual findings, it should "consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest." *Id.*

When considering whether terminating a parent's rights to a child is in the child's best interest, a trial court must consider the factors enumerated in Tenn. Code Ann. § 36-1-113(i). A trial court is not required to find that each of the enumerated factors exists before concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Although in some circumstances "the consideration of one factor may very well dictate the outcome of the analysis," *In re Audrey S.*, 182 S.W.3d at 878, a court is still obligated to consider "all the factors and all the proof." *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

The trial court went through an examination of all of the factors set forth in Tenn. Code Ann. § 36-1-113(i)(1) and found that nine of the factors weighed in favor of termination: factors (A), (B), (C), (H), (I), (L),[4] (M), (O), (P). The court found that six of the statutory factors weighed against termination: factors (D), (E), (J), (K), (S), and (T). The remaining factors did not apply or did not weigh in favor of either party. We will focus our attention upon the factors to which Mother assigns error and consider all of the statutory factors.

Mother argues that the trial court erred in its analysis of factors (A) and (B). The trial court's analysis of these factors (which begins with the language of the relevant factor in bold type) is set out below:

> (A) **The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority.** This factor weighs heavily in favor of [Foster Parents]. The minor child has resided with [Foster Parents] for over three (3) years

---

[4] Mother does not include factor L in the list of factors found by the trial court to favor termination. The trial court expressly found that the Department made reasonable efforts to assist Mother and stated that, "Ms. Gentry fulfilled her obligations plus in this case." Thus, this factor was found to favor termination.

at the time of trial, and, by all accounts this has been a stable home for the child. As mentioned in Ground 2 above, [Mother] has improved her circumstances, however, the Court finds that the lack of termination of parental rights would impact the child's critical need for stability and continuity of placement throughout the child's minority.

(B) **The effect a change of caretaker and physical environment is likely to have on the child's emotional, psychological, and medical condition.** The change of caretakers for the minor child would be difficult. The minor child is four (4) years old, and has resided with [Foster Parents] for over three (3) years. Introducing someone else as another mother would have an effect on the minor child's emotions and psychological well-being. Although the minor child does refer to [Mother] as mommy, she has relied upon [Foster Parents] the vast majority of her life on an everyday basis. [Foster Parents] testified this, and [Mother] admitted it would be very difficult to change this minor child's home setting at this time. The factor weighs in the favor of the Petitioners, [Foster Parents].

In challenging these findings, Mother objects to the trial court's emphasis on the length of time the child had been with Foster Parents. She argues that the length of this period was largely caused by the protracted nature of the termination proceedings. Mother also emphasizes the fact that the filing of the termination petition coincided with her motion to obtain unsupervised visits with the child. As stated above, however, the best interest analysis focuses on the perspective of the child rather than that of the parents. *In re Audrey S.*, 182 S.W.3d at 878. The trial court properly placed significance on the child's experience of living with the Foster Parents for over three years, most of her life. Moreover, as the trial court found in other sections of its order, Mother's own actions or failures to act contributed to the length of time in which the child was in state custody.[5]

With respect to factor (A), Tenn. Code Ann. § 36-1-113(i)(1)(A), Mother also objects to the court's finding that, although she had improved her circumstances, failure to terminate her parental rights would negatively affect Lola's need for stability and continuity. Mother argues that the court failed to sufficiently explain "what particular evidence" it relied upon in reaching this conclusion. She emphasizes that, at the time of the court's ruling, Mother had maintained steady employment and an appropriate home for over three years. As already stated, the length of time that Lola had lived with the Foster Parents was a significant fact properly relied upon by the court. The trial court was not required to restate all of the relevant factual findings with respect to each best interest

---

[5] In its discussion of factor (M), a factor not addressed by Mother on appeal, the trial court found that it took Mother over a year to pass the required two drug screens and that, at her first visit with the child, she was arrested on an outstanding warrant for failing to turn herself in to the Giles County Sheriff's Department.

factor. *In re Glenn B.*, No. M2023-00096-COA-R3-PT, 2023 WL 8369209, at *8 (Tenn. Ct. App. Dec. 4, 2023). In its discussion of factor (O), the trial court noted the absence of evidence about Mother "ever having provided safe and stable care for this minor child or any other child for any sustained period of time." As will be discussed below, the court also expressed concern about Mother's ability to provide Lola with the services she required. Furthermore, at the time of the filing of the termination petition, Mother was limited to supervised visits. We agree with the trial court's finding that this factor weighs in favor of termination.

As to factor (B), Tenn. Code Ann. § 36-1-113(i)(1)(B), Mother also asserts that the trial court ignored the testimony of two therapeutic visitation supervisors who described her close relationship with Lola. We disagree. The trial court included a summary of the testimony of these two witnesses in its order and noted their positive comments about the visits and Mother's relationship with Lola. He found one of these witnesses "mostly credible," citing her lack of documentation and admitted difficulty recalling the dates of the visits. The trial court acknowledged that the child called Mother "Mommy" and, in its discussion of factor (E), expressly found that Mother had "cultivate[d] a positive relationship with the child." The basis for the trial court's weighing of factor (B) in favor of termination is the fact that removing the child from the care of Foster Parents was likely to have a detrimental effect on her. The evidence does not preponderate against these findings.

Next, Mother challenges the following determination by the trial court with respect to factor (C), Tenn. Code Ann. § 36-1-113(i)(1)(C):

> **Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs.** This factor weighs in favor of [Foster Parents]. [Foster Parents] have consistently demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs. From making sure the medical attention for the minor child['s] needs were completed, to reading stories on a consistent basis, [Foster Parents] have shown this factor the entirety of the time for the minor child. Although [Mother] has a safe home and many of the necessary materials now, she has not ever shown a continuity and stability for this minor child. [Mother] is living with Ms. [H.], and Ms. [H.] did say this was a permanent residence. However, there is no lease and [Mother] has not been responsible for any rent or utilities during her time at her current residence. [Mother] has not attended many educational needs for this minor child to date.

This Court is sympathetic to Mother's criticism that the trial court seems to focus its analysis on the Foster Parents rather than the parent, as contemplated by the wording of the statute. The trial court's analysis would have evidenced an understanding of this factor

more clearly by beginning with a consideration of Mother's demonstration of promoting continuity and stability for the child's needs. Nevertheless, the trial court did consider Mother's conduct and demonstrations of her contributions to meeting the child's needs. Unfortunately, in light of the fact that the child had lived with Foster Parents for most of her life and in light of Mother's limitations and circumstances during these years, Mother had not established a record of consistently meeting the child's basic needs. Mother cites the removal of the child from her custody at birth and the limitations placed on her contact with the child. As previously stated, these circumstances were the result of Mother's drug addiction. In addition, as emphasized above, once a ground for termination has been established, the trial court must view everything from the perspective of the child. While recognizing Mother's progress, the trial court properly focused upon the child's needs. It is also noteworthy that the trial court credited Ms. Gentry's testimony that Mother had "not been very involved with medical treatment, therapies, and other recommended treatment" for the child. We agree with the trial court's conclusion that factor (C) favored termination of Mother's parental rights.

Under factor (D), Tenn. Code Ann. § 36-1-113(i)(1)(D), the trial court found that Mother had "secured a healthy attachment" with Lola and that, even if the attachment was not currently a parental attachment, there was a reasonable expectation that Mother "could create such an attachment." The preponderance of the evidence supports the trial court's ruling that this factor favored Mother. Factor (E) concerns "whether the parent has maintained regular visitation" and cultivated a "positive relationship with the child." Tenn. Code Ann. § 36-1-113(i)(1)(E). The trial court found that, although it took over a year for Mother to obtain two clean drug screens, once visits were permitted, Mother "has made most of the visits and the testimony was clear a positive relationship has been established." The evidence supports the trial court's finding that this factor favored Mother.

The trial court found that factors (F) and (G) were not applicable. Factor (F), Tenn. Code Ann. § 36-1-113(i)(1)(F,) concerns whether the child fears living in the parent's home; and factor (G), Tenn. Code Ann. § 36-1-113(i)(1)(G), concerns whether anything in the parent's home would exacerbate a child's "experience of trauma." The evidence does not preponderate against the trial court's finding regarding these factors.

Factors (H) and (I) concern the child's attachment with "another person or persons in the absence of the parent," Tenn. Code Ann. § 36-1-113(i)(1)(H), and the child's "emotionally significant relationships with persons other than parents and caregivers," Tenn. Code Ann. § 36-1-113(i)(1)(I). Under factor (H), the trial court found that Lola "has created a healthy parental attachment with [Foster Parents] and their extended family." The trial court determined that this factor weighed heavily in favor of the termination of Mother's parental rights, and Mother has not challenged this finding on appeal. The evidence supports the trial court's ruling on this factor. With respect to factor (I), also not discussed by Mother on appeal, the trial court found that Lola had significant relationships with her siblings at Foster Parents' home. Significantly, the trial court also found that

Foster Parents "have been primarily responsible for establishing the relationship with [Mother's] other child," Lola's half-brother. The trial court weighed factor (I) in favor of termination, and the evidence supports the trial court's finding.

The trial court made the following findings with respect to factor (J), Tenn. Code Ann. § 36-1-113(i)(1)(J):

> **Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner.** The Court finds the mother has rectified many of the issues that were present at the dependency and neglect/severe abuse stage of the proceedings. However, the Court still finds a great deal of concern that [Mother] is still unwilling to admit to previous drug issues. As previously mentioned the Court has significant questions with the Respondent's credibility regarding her drug use while pregnant. [Mother] has shown an adjustment of circumstances and that change has been consistent for approximately a period of time [sic]. The current residence of [Mother] does not appear to have any criminal activity within the structure. The Court does find this factor slightly favors [Mother], but does not give [it] great weight.

Mother's argument is that the trial court erred in failing to give more weight to this factor in her favor. She emphasizes her "efforts and participation in programs, services, and other resources that assisted her in making a lasting adjustment of circumstances, conduct, and conditions." She asserts that the testimony at trial "reflected that the Mother admitted to drug use up until the point that she discovered she was pregnant." Mother also avers that, "The trial court largely ignores that the Mother participated in and passed a drug screen in December of 2019." Mother argues that the trial court failed to adequately consider the fact that she was incarcerated for a significant period of time before her first visit with Lola and that the Department did not come to her home to obtain drug screens.

The trial court commended Mother's efforts to maintain sobriety. Mother's progress after Lola's birth does not address the trial court's concern about Mother's lack of responsibility and acknowledgment of her drug use while pregnant. What Mother fails to account for is the trial court's credibility determination, which is entitled to great deference by this Court and cannot be overturned absent clear and convincing evidence. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995). Mother testified that she did not use methamphetamines after she learned of her pregnancy in June 2019. Yet, she tested positive for drugs in September and November 2019. At trial, Mother attempted to

call the validity of these drug screens into question, but she presented no evidence to support her skepticism. Mother has not pointed to clear and convincing evidence to contradict the trial court's credibility finding. We agree with the trial court's finding that this factor favors Mother and its conclusion not to give it great weight.

Factor (K), Tenn. Code Ann. § 36-1-113(i)(1)(K), concerns whether a parent has taken advantage of available services "to assist in making a lasting adjustment of circumstances, conduct, or conditions." The trial court found that, while Mother had taken advantage of available services, she did not do so for the first year and a half of the child's life. The trial court also found that "[i]t took [Mother] a significant period of time to secure two (2) clean drug screens," which was the obstacle in starting visits. Furthermore, the trial court noted that Mother "still has limited visitation with her oldest child." The trial court weighed factor (K) in Mother's favor but did not give it significant weight. The trial court's findings support its ruling under factor (K), and Mother has not addressed this factor on appeal. Factor (L), Tenn. Code Ann. § 36-1-113(i)(1)(L), relates to whether the Department made reasonable efforts to assist the parent while the child is in custody. The trial court found that the Department did make reasonable efforts to help Mother and that "any issues with services was primarily due to [Mother] failing to take advantage of this assistance." Mother did not make any arguments regarding this factor on appeal, and the evidence does not preponderate against the trial court's findings.

Factor (M), Tenn. Code Ann. § 36-1-113(i)(1)(M), asks whether the parent has "demonstrated a sense of urgency" to regain custody of his/her child or to address the circumstances that made an award of custody contrary to the child's best interest. The trial court found that this factor weighed in favor of termination, citing Mother's delay in obtaining clean drug screens and her incarceration for failing to turn herself in on an outstanding warrant. Mother has not disputed the trial court's ruling on this factor, and the evidence supports the trial court's ruling. The trial court determined that factor (N), Tenn. Code Ann. § 36-1-113(i)(1)(N), did not apply. This factor inquires whether anyone residing in or frequenting the parent's home has shown brutality or abusive or neglectful conduct. On appeal, the Department argues that the trial court should have found that this factor favored termination due to Mother's history of drug addiction and the harm it caused Lola. In light of Mother's sobriety for several years after Lola's birth, we cannot say that the evidence preponderates against the trial court's ruling on this factor.

Factor (O), Tenn. Code Ann. § 36-1-113(i)(1)(O), not addressed by Mother on appeal, concerns whether the parent "has ever provided safe and stable care for the child or any other child." Here, the trial court noted that Mother did not have custody of either of her children, Lola or Lola's older half-brother. The trial court found that no evidence was presented about Mother ever having provided safe and stable care for any child "for any sustained period of time." The trial court credited the testimony of James D., the father of Lola's half-brother, about his concerns about her care of that child. In light of the

progress made by Mother, the trial court weighed this factor "only slightly in favor" of Foster Parents. The evidence does not preponderate against this finding.

On factor (P), Tenn. Code Ann. § 36-1-113(i)(1)(P), the trial court stated:

> **Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive.** The Court finds [Foster Parents] have absolutely demonstrated an understanding of the basic and specific needs required for this child to thrive. [Foster Parents] have shown that from the moment they've become responsible for this minor child. However, [Mother] has not shown that. The Court weighs heavily on this factor for the lack of therapy attendance by [Mother]. [Mother] did testify that she understand[s] what is required for this minor child to thrive, but the Court has some questions about that. [Mother] has never had to meet the complicated scheduling for this child's needs. [Mother] has not met with the multiple therapists or attended even a full week's obligations. [Foster Parents] have repeatedly shown the very specific needs for this child will be fulfilled. This factor weigh[s] in favor of [Foster Parents].

Understandably, as with factor (C), Mother focuses on the trial court's initial discussion about Foster Parents. However, as before, the trial court did address the factor as to her, the parent. As to Mother's attendance at therapy sessions, Mother argues that the trial court "chooses to ignore the testimony of the Mother and other witnesses which reflected both the Mother's attempts to participate in the child's therapeutic needs as well as the roadblocks put in her way in reference to same." Again, the trial court assessed Mother's credibility and the credibility of all of the witnesses, including Ms. Gentry, who testified about Mother's scheduling difficulties and observed that Mother "struggles looking out for anyone but herself, and she rarely put the needs of her minor child before her own." Ms. Gentry further testified that she had "concern that [Mother] could not manage the needs of the minor child." The evidence does not preponderate against the trial court's findings as to this factor.

Factor (Q), Tenn. Code Ann. § 36-1-113(i)(1)(Q), concerns a parent's ability to create and maintain a stable home where the child can thrive. The trial court determined that this factor did not favor either party under the circumstances. The key facts cited by the trial court were that Mother had a safe place to live, in a friend's home, but that she "could be asked to leave there at any point without recourse" and that she did not have a lease and did not pay rent or utilities. The trial court also noted, however, that Mother testified that she had the ability to get a place of her own if necessary. Mother does not assign error to the trial court's ruling here, and we conclude that the evidence does not preponderate against the trial court's ruling. The trial court did not give great weight to factor (R), Tenn. Code Ann. § 36-1-113(i)(1)(R), concerning the healthiness and safety of the parent's home. The court found that Mother had a safe home for the child, but

incorporated the facts outlined with respect to factor (Q) as being of concern. The evidence does not preponderate against the trial court's ruling on this factor, which Mother has not addressed on appeal.

The trial court weighed factor (S), Tenn. Code Ann. § 36-1-113(i)(1)(S), concerning child support, in Mother's favor, finding that, once Mother obtained employment, child support had been garnished from her paycheck. Mother has not challenged this ruling, and the evidence supports it. Similarly, with respect to factor (T), regarding a parent's mental or emotional fitness, the trial court weighed the factor "slightly" in favor of Mother. The court found that Mother had "become mentally and emotionally fit" to care for Lola. Mother does not challenge this ruling, and the evidence does not preponderate against it.

At the end of her brief, Mother cites the requirement that a trial court must make an "'individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away.'" *In re Carrington*, 483 S.W.3d at 523 (quoting *In re Swanson*, 2 S.W.3d at 188). Contrary to Mother's assertion, however, the trial court did make this constitutionally-required determination by finding that the statutory requirements for termination—the existence of a ground for termination and termination being in the child's best interest—were met by clear and convincing evidence. *See Carrington*, 483 S.W.3d at 523 (stating that, by going through the statutory analysis, the trial court ensures that a parent receives the required constitutional protections).

Mother believes that the trial court placed inadequate weight upon her relationship with Lola and her progress in addressing her drug addiction. However, as previously discussed, once a ground for termination has been found, the perspective changes to that of the child in the best interest analysis. Tennessee Code Annotated section 36-1-101(d) expressly states that, "when the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child, which interests are hereby recognized as constitutionally protected." This Court has previously observed:

> Because long term foster care, with the instability and insecurity inherent therein, is disfavored under the public policy established by the legislature and is seldom in a child's best interest, many of the statutory best interest factors relate to the likelihood that the child will be able to leave foster care and return to the parent's home in the near future.

*In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *8 (Tenn. Ct. App. June 26, 2006). While Mother's progress is indeed commendable, the evidence supports the trial court's findings, and those findings provide clear and convincing evidence to support the trial court's determination that termination of Mother's rights is in Lola's best interest.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Geneva D., for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE